# UNITED STATES DISTRICT COURT

## SEALED for the
Eastern District of California

**FILED**



JUN 0 8 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

In the Matter of the Search of
INFORMATION ASSOCIATED WITH
BAMBER48@YAHOO.COM,
CARRIE_DAY@YAHOO.COM,
GSTEPHENS93@YAHOO.COM,
HOWARDM909@YAHOO.COM,
JBRYANT174@YAHOO.COM,
JDAVIDS46@YAHOO.COM,
KAYLAALLEN992@YAHOO.COM, AND
WAYNEJOHNSON506@YAHOO.COM THAT IS STORED
AT PREMISES CONTROLLED BY YAHOO! INC.

)
)
)
)
)
)
)

Case No.

2: 1 8 - SW - 0 4 9 6     EFB

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____ Eastern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | [conspiracy] |
| 18 U.S.C. § 641 | [theft of government property] |
| 18 U.S.C. § 1028A | [aggravated identity theft] |
| 18 U.S.C. § 1343 | [wire fraud] |
| 42 U.S.C. § 408 | [Social Security fraud] |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☐ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Sean Fagan, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6 - 8 - 2018

_____
*Judge's signature*

City and state: Sacramento, California

Edmund F. Brennan, U.S. Magistrate Judge

1  McGREGOR W. SCOTT
   United States Attorney
2  ROBERT J. ARTUZ
   Assistant United States Attorney
3  501 I Street, Suite 10-100
   Sacramento, CA 95814
4  Telephone: (916) 554-2700
   Facsimile: (916) 554-2900

5

6  Attorneys for Plaintiff
   United States of America

7

8  IN THE UNITED STATES DISTRICT COURT

9  EASTERN DISTRICT OF CALIFORNIA

10

11  In the Matter of the Search of:

   INFORMATION ASSOCIATED WITH
12  BAMBER48@YAHOO.COM,
   CARRIE_DAY@YAHOO.COM,
13  GSTEPHENS93@YAHOO.COM,
   HOWARDM909@YAHOO.COM,
14  JBRYANT174@YAHOO.COM,
   JDAVIDS46@YAHOO.COM,
15  KAYLAALLEN992@YAHOO.COM, AND
   WAYNEJOHNSON506@YAHOO.COM THAT
16  IS STORED AT PREMISES CONTROLLED
   BY YAHOO! INC.
17

18

CASE NO.

AFFIDAVIT IN SUPPORT OF AN APPLICATION
FOR A SEARCH WARRANT

**FILED UNDER SEAL**

19      I, Sean Fagan, being first duly sworn, hereby depose and state as follows:

20                  **I.      INTRODUCTION AND AGENT BACKGROUND**

21      1.      I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§

22  2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Yahoo! Inc. (hereafter "Yahoo") to disclose to the

23  government records and other information, including the contents of communications, associated with

24  the above-listed accounts that are stored at premises owned, maintained, controlled, or operated by

25  Yahoo, a company headquartered at 701 1st Ave., Sunnyvale, CA 94089. The information to be

26  disclosed by Yahoo and searched by the government is described in the following paragraphs and in

27  Attachments A and B.

28      2.      I am a Special Agent with the Social Security Administration's Office of Inspector

AFFIDAVIT

1

1  General, and have been since September 2017.  I am currently assigned to the San Francisco Field

2  Division where I investigate threats against Social Security employees and facilities, employee

3  malfeasance, and Social Security fraud such as direct deposit fraud, identity theft, Social Security

4  Number misuse, and other types of fraud against Social Security programs.  I have six years of prior

5  federal law enforcement experience as a Special Agent with the Diplomatic Security Service under the

6  U.S. Department of State where both domestically and internationally I investigated crimes such as

7  passport fraud, visa fraud, identity theft, employee malfeasance, and threats and other crimes involving

8  U.S. Government personnel, property, and information.  In 2011, I completed the Federal Law

9  Enforcement Training Center's Criminal Investigator Training Program, a comprehensive 11-week

10  course that included training in electronic sources of information, conducting investigations in a cyber

11  environment, and financial aspects of investigations.  I then completed the Diplomatic Security

12  Service's Basic Special Agent Course that included an additional 12 weeks of training in topics such as

13  dignitary protection, visa and passport fraud investigations, and international investigations.

14  Furthermore, over the course of my federal law enforcement career, I have worked with and received

15  guidance from other experienced investigators from various federal, state, local, and foreign law

16  enforcement agencies in the fields of general crimes, fraud, identity theft, financial crimes, digital

17  crimes, dignitary protection, kidnapping/hostage-taking, counterintelligence, and terrorism.  Prior to

18  beginning my federal law enforcement career, I served in the U.S. Marine Corps for 10 years as an

19  infantryman and counterintelligence/human intelligence officer.  I also hold a bachelor's of science in

20  criminal justice.

21      3.      The facts in this affidavit come from my personal observations, my training and

22  experience, and information obtained from other agents and witnesses.  This affidavit is intended to

23  show simply that there is sufficient probable cause for the requested warrant and does not set forth all of

24  my knowledge about this matter.

25      4.      Based on my training and experience and the facts set forth in this affidavit, there is

26  probable cause to believe that former Social Security Administration (SSA) employee Eric Lemoyne

27  Willis and a subject named Darron Dimitri Ross engaged in, and continue to engage in, a conspiracy or

28  scheme involving unlawful acts including, without limitation: Willis using his official position at SSA to

AFFIDAVIT

2

1   gather the personally identifiable information of Social Security beneficiaries and using that information

2   to unlawfully divert the SSA benefits of at least 129 victims to fraudulently-created bank accounts

3   controlled by him or Ross.  There is probable cause to believe that Willis and Ross committed violations

4   of at least 18 U.S. Code § 371 [conspiracy], 18 U.S. Code § 641 [theft of government property], 18 U.S.

5   Code § 1028A [aggravated identity theft], 18 U.S. Code § 1343 [wire fraud], and 42 U.S. Code § 408

6   [Social Security fraud].  There is also probable cause to search the information described in Attachment

7   A for evidence, instrumentalities, and fruits of these crimes further described in Attachment B.

## II.    JURISDICTION

9       5.  This Court has jurisdiction to issue the requested warrant because it is "a court of

10  competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).

11  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense

12  being investigated." 18 U.S.C. § 2711(3)(A)(i).

## III.    PROBABLE CAUSE

### Eric Willis

15      6.  SSA terminated Willis from employment on January 5, 2018.  At the time of his

16  termination, Willis was an Operations Supervisor at the SSA field office in Lodi, California where he

17  worked from February 7, 2016 to the date of his termination.  Prior to his reassignment to the Lodi

18  office, Willis was an Operations Supervisor at SSA's South Sacramento field office.  Willis started

19  working for SSA in 2003.

20      7.  As of June 1, 2018, through examining SSA records, I have identified 129 Social

21  Security retirement and disability beneficiaries whose benefits were unlawfully diverted to other bank

22  accounts ("drop accounts") and whose SSA records Willis accessed prior to each fraudulent change.

23  After Willis queried a given victim, an unidentified individual then made a phone call to an SSA field

24  office somewhere in the U.S. from a variety of apparent prepaid cellphone numbers (commonly referred

25  to as "burner phones"), used the victim's personally identifiable information to impersonate the victim

26  to an SSA employee, and then successfully changed the victim's direct deposit to a drop account.  SSA

27  then paid the victim's next Social Security payment to the drop account.  In most cases, the victim

28  contacted SSA after the first missing Social Security payment.  SSA then restored the original direct

1   deposit information and reissued the missing payment to the victim.  However, in some cases the victim

2   did not contact SSA for several months or more.

3        8.      SSA records show Willis used his SSA computer to access reports for each and every one

4   of these 129 victims prior to the fraudulent direct deposit change.  For approximately 33% of the

5   victims, the fraudulent direct deposit changes were made within 30 days of Willis accessing their SSA

6   records, approximately 75% of the direct deposit changes were made within 90 days, and approximately

7   98% were made within 180 days.  The first known victim's direct deposit information was fraudulently

8   changed on December 3, 2015.  The most recent known victim's direct deposit was fraudulently

9   changed on May 2, 2018.  The total estimated theft loss for the 129 known victims is at least $393,000.

10       9.      I have found no explanation to justify an apparent 100% correlation between Willis'

11   query of a given Social Security Number and the fraudulent direct deposit change which follows shortly

12   thereafter.  Since Willis worked in an SSA field office whose primary role is to serve the public within

13   its geographic area of responsibility, it is notable that approximately 58% of the victims resided outside

14   of the geographic service areas for the Lodi and South Sacramento SSA offices where Willis worked.

15   More significantly, approximately 24% of the victims resided outside of the state of California entirely.

16   Based on my training and experience, there is probable cause to believe Willis accessed these victims'

17   records for improper reasons, including to collect the personally identifiable information necessary to

18   unlawfully change each victim's direct deposit to a drop account.

19                              **Bank Records for Drop Accounts**

20       10.     The Social Security benefits of the 129 beneficiaries were diverted to various drop

21   accounts held at American Express National Bank, Green Dot, and Metabank.  All three of these

22   financial institutions offer prepaid debit cards available for purchase in a retail store or online.  Many of

23   these prepaid debit cards have the ability to receive direct deposits like a traditional bank account.

24   Furthermore, since the accountholder information is usually provided online, it is easy to provide false

25   accountholder information when setting up the account.  Based on my training and experience, prepaid

26   debit cards are commonly utilized in direct deposit fraud schemes against SSA.

27       11.     I have identified 43 American Express, Green Dot, and Metabank accounts that were

28   used as drop accounts for the victims' Social Security benefits.  Of these, I have examined bank records

AFFIDAVIT

4

1    for 10 prepaid debit card accounts associated with approximately 50 victims between March 2016 and

2    January 2018. After reviewing various records for the persons named on these 10 accounts and

3    speaking with several of the purported accountholders via phone, I believe the accountholders named on

4    the drop accounts are actually identity theft victims whose identities were used to open the drop

5    accounts without their knowledge. The billing addresses listed on the 10 drop accounts are a variety of

6    Charlotte, North Carolina addresses.

7           12.     Counting debits of at least $50, the diverted Social Security payments were withdrawn

8    from the 10 drop accounts via approximately 340 transactions, the vast majority of which were cash

9    withdrawals of several hundred dollars each. Based on my training and experience, the fact that the

10   funds in the drop accounts are overwhelmingly withdrawn in cash is indicative of criminal activity.

11   Approximately 73% of the withdrawals occurred in the Charlotte, North Carolina area, approximately

12   16% occurred in the southern California area (suggesting a southern California-based coconspirator),

13   and approximately 6% occurred in the Atlanta, Georgia area. The remaining handful of withdrawals

14   occurred in Scottsdale, Arizona and Sandy, Utah.

15          13.     As one example, Green Dot account ending in 0799 is a drop account associated with

16   eight direct deposit, Social Security fraud victims. Jeremy Davids is the individual listed as the

17   accountholder. I spoke to Davids via phone: Davids stated he has never banked with Green Dot.

18          14.     In addition to the 10 drop accounts discussed above, more recently obtained bank records

19   indicate withdrawals from other drop accounts as recently as May 20, 2018.

20                              **Internet Access Logs for Drop Accounts**

21          15.     Via a grand jury subpoena, I examined logs of internet protocol (IP) addresses that were

22   used to access the drop accounts via the internet. According to Green Dot records, IP address

23   76.248.20.51 was used on May 16, 2016 to access Green Dot account 0799. According to AT&T, the

24   related internet service provider, IP address 76.248.20.51 was assigned to Willis' home internet service

25   on that date. According to AT&T subscriber information, Willis subscribed to AT&T home internet

26   service at 40 Park City Court, Apartment 11205, Sacramento, California, from May 21, 2015 until

27   October 4, 2016. A Wells Fargo account application in Willis' name and signed by Willis on October

28   24, 2015 lists the same address as his statement mailing address and street address.

16.     In addition to the occasion discussed above, there were approximately 255 other occasions where the 10 accounts I reviewed were accessed via the internet between February 2016 and August 2017.  According to publicly available IP lookup tools, the majority of this activity was from IP addresses in the Charlotte, North Carolina area.  Based on my training and experience and other information contained in this affidavit, this information is indicative of a coconspirator operating in the Charlotte area.

### Bank Records for Eric Willis

17.     I have reviewed bank records for accounts held in Willis' name at Mokelumne Federal Credit Union, Sun Pacific Federal Credit Union, and Wells Fargo.  During the period December 7, 2015 through November 20, 2017, there were 62 deposits into Willis' accounts totaling approximately $74,000 where the source of the funds was not readily identifiable.  With the exception of two deposits, all appear to be cash deposits; the two exceptions were wire transfers totaling $5,150 from an account at Compass Bank in Willis' name.  Of the 62 deposits, six deposits totaling $10,240 occurred in the Charlotte, North Carolina area and four deposits totaling $8,800 occurred in the San Diego, California area.  Based on my training and experience, I believe these unexplained cash deposits are composed of Willis' illicit earnings from the direct deposit fraud scheme discussed in this affidavit.

### Darron Ross

18.     Surveillance footage provided by First Citizens Bank shows an automated teller machine (ATM) withdrawal from Green Dot drop account 0799 for $403.00 on June 17, 2017 at a First Citizens Bank drive-thru ATM in Huntersville, North Carolina.  In the footage, the person conducting the withdrawal is driving a dark-colored Mercedes-Benz Sprinter van bearing North Carolina plates EH4037.  According to a North Carolina vehicle registration search conducted by Customs and Border Protection's National Law Enforcement Communications Center, the vehicle is currently registered to Darron Dimitri Ross, North Carolina driver's license number 38643319.  The person conducting the withdrawal appears to match Ross' driver's license photo.

19.     According to Green Dot, the debit card associated with the drop account ending in 1023 was ordered online and shipped to 1604 Oakdale Drive, Charlotte, North Carolina.  This account is associated with eight direct deposit fraud victims and there were more than 50 withdrawals using the

1  debit card shipped to this address.  LexisNexis Accurint and official county records available online

2  associate this address with Ross' aunt, uncle, and cousins.

3       20.    The surname Ross is also Willis' mother's maiden name.  According to SSA records and

4  the death certificate for Willis' mother, Willis' grandfather is "James Harrison Ross" or "James H.

5  Ross."  According to SSA records, Darron Ross' great grandfather is "Harry Ross" or "James H. Ross."

6  If Willis and Ross share the common ancestor "James H. Ross," they are first cousins once removed.

7       21.    According to Officer Brian Tillack, Probation/Parole Officer, North Carolina Department

8  of Public Safety, Ross is under his supervision for probation since February 2018 for identity theft-

9  related offenses from August 2015 and January 2016.  Ross was under Officer Tillack's supervision for

10  a previous period that ended in January 2017.  I provided Officer Tillack with still images of the

11  aforementioned First Citizens Bank withdrawal conducted on June 17, 2017.  Additionally I provided

12  still images of three other withdrawals at Sun Trust Bank ATMs from Green Dot drop account 1023 on

13  March 17, 2017; May 9, 2017; and January 19, 2018.  Officer Tillack stated, "The first picture on

14  06/17/2017 is hard for me to tell.  The others are most certainly Mr. Ross."

15       22.    The Police Department of Mooresville, North Carolina, arrested Ross on the evening of

16  January 30, 2016 for credit card fraud.  Based on my discussions with Detective Chris Jorgensen of

17  Mooresville PD and review of the police reports, Mooresville PD had probable cause to believe that

18  Ross had recently communicated with a coconspirator via text message on a cellphone from his vehicle

19  to commit fraud.  On the day of Ross's arrest, Mooresville PD seized two cellphones in Ross's

20  possession incident to his arrest, and it located and seized a third cellphone after a warrantless search of

21  Ross's vehicle pursuant to probable cause.  Mooresville PD was able to determine that at least one of the

22  seized phones was used to communicate with Ross's coconspirator.  The three cellphones seized from

23  Ross include two Apple iPhone cellphones and a Samsung cellphone.

24       23.    Mooresville PD also seized a Wells Fargo Bank transaction receipt found in Ross'

25  possession.  I examined a photograph of this receipt and found that the receipt was for a $4,000 cash

26  deposit into a Wells Fargo bank account ending in 8228.  The deposit occurred at 12:51 PM on January

27  30, 2016, several hours prior to Mooresville PD's arrest of Ross.  The receipt indicated the deposit

28  would be credited to the account on February 1, 2016.

24.    I compared the Wells Fargo transaction receipt seized from Ross to bank records for Wells Fargo account number 1288188228 held by Willis. I located a deposit for $4,000 made in a branch/store and credited to the account on February 1, 2016. I spoke to Wells Fargo who confirmed that the $4,000 deposit listed on Willis' statement for account number 1288188228 was the same deposit listed on the receipt seized from Ross. The deposit occurred at Wells Fargo branch number 67393 located at 1616 Central Ave in Charlotte, North Carolina. The Wells Fargo branch is located less than 30 miles from the location where Mooresville PD arrested Ross.

25.    Based on my training and experience and the facts set forth in this affidavit, I believe Ross deposited $4,000 of cash obtained through illicit means into the Wells Fargo account of Willis on January 30, 2016, only hours prior to Mooresville PD's arrest of Ross the same day.

**Telephone Contact Between Willis and Ross**

26.    T-Mobile toll records for Willis' phone number (916-710-3366) for the period 04/05/2017 to 02/27/2018 list 113 call records between Willis' phone number (916-710-3366) and Ross' phone number (980-254-1979). A LexisNexis Accurint report associates phone number 980-254-1979 with Ross. Officer Tillack confirmed 980-254-1979 as a phone number he previously used to contact Ross. T-Mobile records state Willis is the subscriber for phone number 916-710-3366 with service effective 04/04/2017.

27.    After examining T-Mobile toll records for Willis' cellular phone number 916-710-3366 between April 2017 and February 2018, I found his text message (also known as short message service, SMS) usage to be disproportionately low when compared to his voice call usage. For example, Willis' T-Mobile toll records list a total of 9,916 calls and text messages. Approximately 747 (7.5%) of the records are text messages; the remaining records are phone calls. In terms of daily usage, Willis averaged over 25 calls per day to or from his mobile number. However, he only averaged approximately two text messages per day.

28.    Furthermore, of Willis' top 15 most contacted numbers (defined as total calls and text messages to or from that number), all of which appear to be cellular phone numbers capable of sending and receiving text messages, only five have records of any text messages. With 113 call records, Ross' phone (980-254-1979) is Willis' 13th most contacted number but they exchanged zero text messages.

1  Therefore, there is probable cause to believe Willis uses a combination of other messaging services such

2  as instant messaging and email.

### Emails Associated with Drop Accounts

4       29.     According to American Express National Bank, the email account associated with

5  account 1866 is HOWARDM909@YAHOO.COM.  According to bank and SSA records, SSA paid

6  Social Security benefits for two different beneficiaries to this account.  American Express locked the

7  account on November 1, 2017 for fraud.  Michael Howard, the individual named on the account, was

8  also one of the 129 direct deposit fraud victims.  I spoke to Howard via phone where he confirmed he

9  lives in the Port Angeles, Washington area and stated he does not use prepaid debit cards, has never

10  done any business with American Express, and has never had a Yahoo account.

11       30.     According to American Express National Bank, the email account associated with

12  account 4675 is CARRIE_DAY@YAHOO.COM.  According to bank and SSA records, SSA paid

13  Social Security benefits for two different beneficiaries to this account.  American Express locked the

14  account on May 5, 2017 for fraud.

15       31.     According to Green Dot, the email account associated with drop account 8068 is

16  KAYLAALLEN992@YAHOO.COM.  According to bank and SSA records, SSA paid Social Security

17  benefits for eight different beneficiaries to this account.

18       32.     According to Green Dot, the email account associated with account 1023 is

19  JBRYANT174@YAHOO.COM.  According to bank and SSA records, SSA paid Social Security

20  benefits for eight different beneficiaries to this account.

21       33.     According to Green Dot, the email account associated with account 7127 is

22  BAMBER48@YAHOO.COM.  According to bank and SSA records, SSA paid Social Security benefits

23  for five different beneficiaries to this account.

24       34.     According to Green Dot, the email account associated with account 0799 is

25  JDAVIDS46@YAHOO.COM.  According to bank and SSA records, SSA paid Social Security benefits

26  for nine different beneficiaries to this account.  Additionally, according to Metabank, the email account

27  associated with account 4782 is also JDAVIDS46@YAHOO.COM.  According to bank and SSA

28  records, SSA paid Social Security benefits for eight different beneficiaries to this account.  Jeremy

AFFIDAVIT

9

1  Davids is the individual named on both accounts.  I spoke to Davids via phone where Davids stated he

2  has never banked with Green Dot or Metabank.

3      35.     According to Metabank, the email account associated with account 2351 is

4  WAYNEJOHNSON506@YAHOO.COM.  According to bank and SSA records, SSA paid Social

5  Security benefits for one beneficiary to this account.  Wayne Johnson, the individual named on the

6  account, was also one of the 129 direct deposit fraud victims.  I spoke to Johnson via phone where

7  Johnson confirmed he lives in Minnesota.  Johnson said he has nothing to do with California and

8  explained that he last visited California in 2011 or 2012 when he wintered in Oceanside.  However, he

9  maintained the same direct deposit with SSA, never visited an SSA field office in California, and never

10 called an SSA office in California.  Johnson stated he has never bought a prepaid debit card and never

11 heard of Metabank.  Johnson said he has never used a Yahoo account.

12     36.     According to Metabank, the email account associated with account 4884 is

13 GSTEPHENS93@YAHOO.COM.  According to bank and SSA records, SSA paid Social Security

14 benefits for eight different beneficiaries to this account.

15             **Probable Cause the Account(s) to be Searched Contain Evidence of a Crime**

16     37.     Based on my training and experience and the facts set forth in this affidavit, there is

17 probable cause to believe Willis and Ross engaged in, and continue to engage in, a conspiracy or scheme

18 to unlawfully divert the Social Security benefits of at least 129 victims.  Given the geographic separation

19 of Willis in California from Ross in North Carolina, the two must use telephonic and electronic means of

20 communication to coordinate and carry out their scheme, as evidenced by the 113 call records between

21 Wills and Ross during an approximately 10-month period.  The geographic separation of the

22 coconspirators, and the sheer volume and specificity of the information required to divert the Social

23 Security benefits of at least 129 victims to at least 43 drop accounts further illustrates the need to use

24 electronic means to record and exchange large amounts of information.  There is probable cause to

25 believe that the individual or individuals who established each fraudulent prepaid debit account also

26 created the corresponding Yahoo account associated with the prepaid debit accountholder.  Furthermore,

27 there is probable cause to believe that the accounts were created for the explicit purpose of conducting

28 and concealing criminal activity and that any subsequent use of the accounts were for criminal purposes.

38.     In order to enable direct deposit for a given prepaid debit card, the cardholder must create
an online account with the financial institution where they must provide identifying information required
by federal law, to include name, date of birth, address, and identification number (usually a Social
Security Number).  Furthermore, the financial institution typically asks for other contact information
such as phone number and email address.  To complete the online account registration, the financial
institution will typically send a verification email to the email address provided by the accountholder.
The accountholder must then access this email and acknowledgment receipt of the email at the email
address provided by either clicking a hyperlink in the body of the email or by going to the financial
institution's website and entering a registration code from the email.  Once the email address is
confirmed and the online account registration complete, the accountholder can then receive account
updates via email such as periodic balance updates and notification of deposits and/or withdrawals.

39.     For example, according to records provided by American Express, when registering a
new online account, American Express first sends an email verification notification to the email address
provided by the accountholder.  Once the accountholder receives the verification email and finishes the
registration, American Express then sends another email to confirm registration is complete.  American
Express may then send other updates about the account via email such as activation of a new card,
scheduled balance inquiries, low balance alerts, statement notifications, and direct deposit notifications.
In contrast, Green Dot stated they do not send a confirmation email that must be received and
acknowledged before finishing the online setup for a new user.

40.     Based on my training and experience, I believe the Yahoo accounts used in conjunction
with American Express, Green Dot, and Metabank drop accounts are email accounts created and
controlled by Willis, Ross, or other coconspirators.  As illustrated by the fact that American Express
records show that American Express sent regular balance notifications and direct deposit notifications to
the email address on file, the contents of the messages contained in these email accounts may have been
used to monitor the accounts.  Furthermore, these email accounts also offer the coconspirators a
readymade, anonymous means to communicate among each other about their criminal activity.  Lastly,
login session information may identify devices and IP addresses used to access a given drop account and
may in turn correspond to devices and IP addresses associated with Willis, Ross, other coconspirators, or

AFFIDAVIT

11

1  other drop accounts.

2      41.    Lastly, there is probable cause to believe Willis, Ross, and any other coconspirators

3  communicated about, and took steps in furtherance of, the fraud scheme discussed in this affidavit prior

4  to the first known fraudulent direct deposit change for victim Paul Banh on December 3, 2015 and that

5  Yahoo's servers contain evidence of their communications.  Based on my training and experience, I

6  believe their fraud scheme required at least one month of preparation before the first fraudulent direct

7  deposit change was made.  The coconspirators needed this time to formulate the plan, agree on the plan,

8  and then carry out steps of the plan which preceded the first known direct deposit change.  Such

9  preceding steps must include identifying potential victims, retrieving the victims' personally identifiable

10  information from SSA systems, opening drop accounts through which to receive the victims' diverted

11  Social Security benefits, and creating the target email accounts.

## IV.    BACKGROUND CONCERNING EMAIL

13      42.    In my training and experience, I have learned that Yahoo provides a variety of on-line

14  services, including electronic mail ("email") access, to the public.  Yahoo allows subscribers to obtain

15  email accounts at the domain name yahoo.com, like the email account listed in Attachment A.

16  Subscribers obtain an account by registering with Yahoo.  During the registration process, Yahoo asks

17  subscribers to provide basic personal information.  Therefore, the computers of Yahoo are likely to

18  contain stored electronic communications (including retrieved and unretrieved email for Yahoo

19  subscribers) and information concerning subscribers and their use of Yahoo services, such as account

20  access information, email transaction information, and account application information.  In my training

21  and experience, such information may constitute evidence of the crimes under investigation because the

22  information can be used to identify the account's user or users.

23      43.    In my training and experience, email providers generally ask their subscribers to provide

24  certain personal identifying information when registering for an email account.  Such information can

25  include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative

26  email addresses, and, for paying subscribers, means and source of payment (including any credit or bank

27  account number).  In my training and experience, such information may constitute evidence of the

28  crimes under investigation because the information can be used to identify the account's user or users.

1  Based on my training and my experience, I know that even if subscribers insert false information to

2  conceal their identity, I know that this information often provide clues to their identity, location or illicit

3  activities.

4      44.     In my training and experience, email providers typically retain certain transactional

5  information about the creation and use of each account on their systems.  This information can include

6  the date on which the account was created, the length of service, records of log-in (i.e., session) times

7  and durations, the types of service utilized, the status of the account (including whether the account is

8  inactive or closed), the methods used to connect to the account (such as logging into the account via the

9  provider's website), and other log files that reflect usage of the account.  In addition, email providers

10  often have records of the Internet Protocol address ("IP address") used to register the account and the IP

11  addresses associated with particular logins to the account.  Because every device that connects to the

12  Internet must use an IP address, IP address information can help to identify which computers or other

13  devices were used to access the email account.

14      45.     In my training and experience, in some cases, email account users will communicate

15  directly with an email service provider about issues relating to the account, such as technical problems,

16  billing inquiries, or complaints from other users.  Email providers typically retain records about such

17  communications, including records of contacts between the user and the provider's support services, as

18  well records of any actions taken by the provider or user as a result of the communications. In my

19  training and experience, such information may constitute evidence of the crimes under investigation

20  because the information can be used to identify the account's user or users.

21      46.     As explained herein, information stored in connection with an email account may provide

22  crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under

23  investigation, thus enabling the United States to establish and prove each element or alternatively, to

24  exclude the innocent from further suspicion.  In my training and experience, the information stored in

25  connection with an email account can indicate who has used or controlled the account.  This "user

26  attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search

27  warrant at a residence.  For example, email communications, contacts lists, and images sent (and the

28  data associated with the foregoing, such as date and time) may indicate who used or controlled the

AFFIDAVIT

account at a relevant time.  Further, information maintained by the email provider can show how and when the account was accessed or used.  For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner.  Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via email).  Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

## V.  INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

47.  I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Yahoo to disclose to the government copies of the records and other information (including the content of communications and stored data) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## VI.  CONCLUSION

48.  Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Yahoo who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## VII.  REQUEST FOR SEALING

49.  I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents

1   discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the

2   investigation.  Accordingly, there is good cause to seal these documents because their premature

3   disclosure may seriously jeopardize that investigation.

4                                                    Respectfully submitted,

5

6

7                                                    Sean Fagan
                                                     Special Agent
                                                     Social Security Administration
8                                                    Office of the Inspector General

9

10   Subscribed and sworn to before me on:    June 8, 2018

11

12   The Honorable Edmund F. Brennan
     UNITED STATES MAGISTRATE JUDGE
13

14

15

16   Shelley Weger for Robert Artuz
     Approved as to form by AUSA ROBERT J. ARTUZ
17

18

19

20

21

22

23

24

25

26

27

28

AFFIDAVIT                                           15

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the email addresses below that are stored at premises controlled by Yahoo! Inc., a company that accepts legal process via lawenforcement-request-delivery@yahoo-inc.com.

BAMBER48@YAHOO.COM

CARRIE_DAY@YAHOO.COM

GSTEPHENS93@YAHOO.COM

HOWARDM909@YAHOO.COM

JBRYANT174@YAHOO.COM

JDAVIDS46@YAHOO.COM

KAYLAALLEN992@YAHOO.COM

WAYNEJOHNSON506@YAHOO.COM

## ATTACHMENT B

### Particular Things to be Seized

I.   **Information to be disclosed by Yahoo! Inc. (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to the Provider, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A:

a.   The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.   All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.   The types of service utilized;

d.   All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

e.    All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

## II.    Information to be seized by the government

All information described above in Section I that constitutes evidence of violations of 18 U.S. Code § 371 [conspiracy], 18 U.S. Code § 641 [theft of government property], 18 U.S. Code § 1028A [aggravated identity theft], 18 U.S. Code § 1343 [wire fraud], and 42 U.S. Code § 408 [Social Security fraud], including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a)  The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s);

(b)  Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber;

(c)  Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

(d)  Evidence indicating the subscriber's state of mind as it relates to the crime under investigation; and

(e)  Evidence that may identify any coconspirators or aiders and abettors, including records that help reveal their whereabouts.

(f)  any correspondence, communication, photograph, or other data concerning Social Security programs or containing the personally identifiable information of individuals any individual; any correspondence, communication, or data evidencing an agreement, plan, practice, or other evidence of a scheme or conspiracy to defraud Social Security beneficiaries or Social Security programs;

and any correspondence, communication, or data evidencing acts or steps taken to further that scheme or conspiracy, whether inherently unlawful or not;

(g) lists of Social Security fraud or identity theft victims, or their personally identifiable information;

(h) the contents of any communication in whatever form where Eric Willis or Darron Ross are a party or otherwise named;

(i) Data evidencing the access or use of any American Express, Green Dot, or Metabank prepaid bank accounts (i.e., drop accounts) used to defraud Social Security beneficiaries or Social Security programs;

(j) Data evidencing the transfer of illicitly obtained funds from drop accounts to any bank accounts held in the name of Eric Willis; and

(k) any and all information which may evidence the location of Eric Willis, Darron Ross, or other coconspirators at a given place and time.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

**SEALED**

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of<br>INFORMATION ASSOCIATED WITH<br>BAMBER48@YAHOO.COM,<br>CARRIE_DAY@YAHOO.COM,<br>GSTEPHENS93@YAHOO.COM,<br>HOWARDM909@YAHOO.COM,<br>JBRYANT174@YAHOO.COM,<br>JDAVIDS46@YAHOO.COM,<br>KAYLAALLEN992@YAHOO.COM, AND<br>WAYNEJOHNSON506@YAHOO.COM THAT IS STORED<br>AT PREMISES CONTROLLED BY YAHOO! INC. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.

2:1 8 - SW - 0 4 9 6      EFB

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location):*

## SEE ATTACHMENT A, attached hereto and incorporated by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized):*

## SEE ATTACHMENT B, attached hereto and incorporated by reference.

**YOU ARE COMMANDED** to execute this warrant on or before _____6/22/2018_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.  ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:     June ___ , 2018 _____

_____
*Judge's signature*

City and state:     Sacramento, California _____

Edmund F. Brennan, U.S. Magistrate Judge
*Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____          _____
Signature of Judge                              Date

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the email addresses below that are stored at premises controlled by Yahoo! Inc., a company that accepts legal process via lawenforcement-request-delivery@yahoo-inc.com.

BAMBER48@YAHOO.COM

CARRIE_DAY@YAHOO.COM

GSTEPHENS93@YAHOO.COM

HOWARDM909@YAHOO.COM

JBRYANT174@YAHOO.COM

JDAVIDS46@YAHOO.COM

KAYLAALLEN992@YAHOO.COM

WAYNEJOHNSON506@YAHOO.COM

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Yahoo! Inc. (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to the Provider, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A:

a.      The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.      The types of service utilized;

d.      All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

e.      All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

## II.      Information to be seized by the government

All information described above in Section I that constitutes evidence of violations of 18 U.S. Code § 371 [conspiracy], 18 U.S. Code § 641 [theft of government property], 18 U.S. Code § 1028A [aggravated identity theft], 18 U.S. Code § 1343 [wire fraud], and 42 U.S. Code § 408 [Social Security fraud], including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a)  The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s);

(b)  Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber;

(c)  Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

(d)  Evidence indicating the subscriber's state of mind as it relates to the crime under investigation; and

(e)  Evidence that may identify any coconspirators or aiders and abettors, including records that help reveal their whereabouts.

(f)  any correspondence, communication, photograph, or other data concerning Social Security programs or containing the personally identifiable information of individuals any individual; any correspondence, communication, or data evidencing an agreement, plan, practice, or other evidence of a scheme or conspiracy to defraud Social Security beneficiaries or Social Security programs;

AFFIDAVIT

2

and any correspondence, communication, or data evidencing acts or steps taken to further that scheme or conspiracy, whether inherently unlawful or not;

(g) lists of Social Security fraud or identity theft victims, or their personally identifiable information;

(h) the contents of any communication in whatever form where Eric Willis or Darron Ross are a party or otherwise named;

(i) Data evidencing the access or use of any American Express, Green Dot, or Metabank prepaid bank accounts (i.e., drop accounts) used to defraud Social Security beneficiaries or Social Security programs;

(j) Data evidencing the transfer of illicitly obtained funds from drop accounts to any bank accounts held in the name of Eric Willis; and

(k) any and all information which may evidence the location of Eric Willis, Darron Ross, or other coconspirators at a given place and time.

AFFIDAVIT